UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WENRICH,                          Case No. 16-13450

     Plaintiff                          Robert H. Cleland
v.                                       United States District Judge

COMMISSIONER OF SOCIAL                   Stephanie Dawkins Davis
SECURITY,                                United State Magistrate Judge

     Defendant(s).
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On September 23, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's disability claim.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 16).  Plaintiff also filed a reply in support her motion for summary judgment.  (Dkt. 21).  The cross-motions are now ready for report and recommendation.

B.     Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on

September 30, 2013, alleging disability beginning January 3, 2013.  (Tr. 20).[1]

Plaintiff's claim is based on the combined effects of bi-polar disorder with manic

episodes, anxiety/depression and suicidal ideation.   The claim was initially

disapproved by the Commissioner on October 14, 2013.  *Id.*  Plaintiff requested a

hearing, and on January 28, 2016, he appeared before ALJ Patricia E. Hurt who

considered the case *de novo*.  (Tr. 37-112).  In a decision dated May 3, 2016, the

ALJ found that plaintiff was not disabled.  (Tr. 17-31).  Plaintiff requested a review

of this decision and on July 27, 2016, the ALJ's decision became the final decision

of the Commissioner when, after the review of additional exhibits,[2] the Appeals

Council denied plaintiff's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc.

Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and can be found at Docket Entry 7.

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

Plaintiff was born in 1967 and was 46 years old on the application date.  (Tr. 30).  Plaintiff has no past relevant work history.  (Tr. 30).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 22).  At step two, the ALJ found that plaintiff's bipolar disorder, post-traumatic stress disorder, anti-social personality disorder, and cannabis abuse were severe impairments.  *Id*.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Tr. 23-25).  The ALJ determined that plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing only simple, routine, and repetitive tasks. He cannot perform tasks at a production rate pace, meaning he cannot perform assembly line work.  He can make only simple work-related decisions.  He can interact frequently with supervisors, occasionally with coworkers, and never with the public.  He can tolerate

> few changes in the routine work setting, meaning he must
> work in the same place doing the same thing every day,
> any any changes to his work setting must be minimal and
> introduced gradually over time.

(Tr. 25).  At step four, the ALJ concluded that plaintiff had no past relevant work.

(Tr. 30).  At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy.  (Tr. 30-

31).

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.   <u>Analysis</u>

1.   Listings

In order to meet Listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders), and/or 12.09,[3] plaintiff must show that he satisfies the

---

[3] As explained in *Wyatt v. Comm'r of Soc. Sec.*, 2017 WL 3224666, at *7 (S.D. Ohio July 31, 2017), report and recommendation adopted, 2017 WL 4349115 (S.D. Ohio Sept. 29, 2017), Listing 12.09 (substance addiction disorders) is appropriately evaluated only with reference to other listed impairments. *Id*. (citing *Buress v. Sec'y of HHS*, 835 F.2d 139, 140-141 (6th Cir. 1987). A 1996 amendment to the Social Security Act provided that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *Id*. (quoting 42 U.S.C. § 423(d)(2)(C)). Final rules enacted in

criteria in both Paragraphs A and B of the Listing.  20 C.F.R. Pt. 404, Subpt. P,

App. 1 §§ 12.00, 12.03, 12.04, 12.06, 12.08 (*see* version in effect from August 12,

2015-May 16, 2016).  The "A" criteria consist of clinical findings which medically

substantiate a mental disorder.   To satisfy the "B" requirements of Listings 12.03,

12.04, 12.06 and/or 12.08, plaintiff must establish at least two of the following

limitations: (1) marked restriction of activities of daily living; (2) marked

difficulties in maintaining social functioning; (3) marked difficulties in maintaining

concentration, persistence, or pace; or (4) repeated episodes of decompensation,

each of extended duration.  *Id*.   Alternatively, a claimant may satisfy the

requirements of a Listings 12.03, 12.04, and/or 12.06 if he has a medically

substantiated mental impairment and functional limitations that meet the "C"

criteria of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  Plaintiff does

not appear to argue that he meets the listing under the "C" criteria, thus the

undersigned will focus on the "B" criteria.

    To meet or equal of the above Listings, the claimant must show both (A)

certain symptoms specific to the listed mental impairment (the "paragraph A"

criteria; and (B) marked restrictions in two out of four areas of functioning (i.e.,

activities of daily living; social functioning; and concentration, persistence, and

---

2016 have removed Listing 12.09 altogether.  *Id*. (citing Revised Medical Criteria for Evaluating
Mental Disorders, 81 FR 66138-01 (Sept. 26, 2016)).

pace, or repeated episodes of decompensation of extended duration (the "paragraph B" criteria). 20 C.F.R. Pt. 404, Subpt. P, Appx 1, §§ 12.00, 12.03, 12.04, 12.06, 12.08 (*see* version in effect from August 12, 2015-May 16, 2016).

As explained above, plaintiff has the burden at Step Three of the sequential analysis of putting forth evidence establishing that he meets a listing. It is therefore incumbent on plaintiff to present medical evidence establishing that he meets all of the requirements one or more of these Listings to meet his burden. *See Sullivan*, 493 U.S. at 530-32. However, the undersigned concludes, as discussed below, that plaintiff has failed to identify any medical evidence supporting a finding that he meets the "B" criteria of Listings 12.03, 12.04, 12.06, or 12.08.

According to plaintiff, the ALJ committed reversible error because she failed to comprehend the severity and depth of his emotional disorders. Plaintiff maintains that the ALJ attempted to circumvent the findings of his actual examiners and discounted the findings because, allegedly, the "paragraph B" criteria were not met. (Tr. 24). Plaintiff argues that the ALJ's findings that he was only moderately restricted in his social functioning restrictions is based on quintessential "cherry-picking" and the conclusion is not supported by competent evidence on the whole record. Plaintiff says that the record is replete with evidence showing that his social functioning is severely limited by his bi-polar

disorder, PTSD, depression, anxiety, and anti-social personality disorder.  His work history shows a pattern and practice of him not being able to get along with others, altercations, firings, paranoia, and social isolation.  He has been constantly homeless and repeatedly evicted.  Plaintiff says that all members of his family have abandoned him except his mother and he has been a victim of repeated and terrible physical and emotional abuse.

Regarding concentration, persistence or pace, plaintiff again suggests that the ALJ cherry picked from the record and wrongfully discounted the severity of his condition.  He contends that this finding lacks support when one views the whole record because the ALJ's conclusion relies principally on limited activities and events taken out of context or cherry picked in the record.  Contrary to the conclusion of the ALJ, "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. § 404, Subpt. P, App 11.  According to plaintiff, the ALJ's resulting conclusion that he can prepare simple meals, drive (has only a license but no vehicle) and shop is hardly substantial evidence that he only has a moderate impairment in his concentration, persistence or pace.

The Commissioner contends that while plaintiff asserts that the ALJ could not reasonably find only "moderate" limitations in social functioning, he fails to

specify any particular error.  Indeed, he makes no specific record citations

whatsoever.  Rather, as the Commissioner points out, he simply asserts "the record

is replete with evidence showing that [Plaintiff's] social functioning is severely

limited ...."  (Pl. Br. 30).  The ALJ found the following:

> In social functioning, the claimant has moderate
> difficulties.  He has indicated that he does not get along
> well with others, and avoids participating in social
> activities.  Nevertheless, treatment providers generally
> fail to describe any difficulty interacting with the
> claimant, instead noting that he is "pleasant."  Moreover,
> he has friends, talks to his mother on a regular basis, and
> is able to shop, and all of these activities require him to
> demonstrate appropriate social skills [Exs B5E; B7F;
> B8F; B11F].  The claimant has trouble getting along with
> others at times, but he relates well in some situations;
> thus, he has a moderate limitation in social functioning.

(Tr. 24).  The Commissioner maintains that this was a reasonable finding.  The

ALJ noted there was some evidence that could support a more extreme limitation,

but other evidence suggested less social limitation.  In short, according to the

Commissioner, there was a conflict in the evidence and the ALJ resolved that

conflict by finding moderate limitation.  Plaintiff does not show how the ALJ erred

where the evidence conflicted and the ALJ resolved that conflict.

The Commissioner also contends that while plaintiff asserts the ALJ

somehow erred in her finding of moderate paragraph B concentration limitations,

he again cites nothing specific that would undermine the ALJ's finding.  (Pl. Br.

30–31).  The ALJ found the following regarding this paragraph B factor:

> With regard to concentration, persistence or pace, the
> claimant has moderate difficulties.  He has stated that he
> cannot maintain attention for prolonged periods, and that
> he has trouble following spoken instructions. In addition,
> treating and examining clinicians often note that his
> thoughts are circumstantial or tangential.  Nonetheless,
> treatment providers typically fail to describe any deficits
> in his attention, concentration, or memory during
> appointments, and he is able to drive, shop, prepare
> simple meals, and handle his own medical care, and all of
> these activities require him to sustain some degree of
> attention and concentration [Exs. B5E; B9E]. For these
> reasons, the claimant has a moderate limitation in
> concentration, persistence, or pace.

(Tr. 24).  According to the Commissioner, the ALJ reviewed the evidence both for

and against more serious concentration limitations, but ultimately found moderate

limitations in this area.  (Tr. 24).  She cited, among other things, the lack of clinical

findings of concentration deficits.  *Id.*  And the ALJ also cited plaintiff's own

admissions about his daily activities, which included driving, shopping, and

preparing meals, all of which required significant concentration.  (Tr. 24, 290-91).

Thus, the Commissioner contends that a finding of moderate concentration

limitations was within the Commissioner's "zone of choice."  *McClanahan*, 474

F.3d at 833.

Plaintiff has not identified any evidence in the record establishing that he

had at least two marked limitations or one marked limitation and repeated episodes

of decompensation, of extended duration, which is required to meet the "B"

criteria.  Plaintiff claims to be more limited than found by the ALJ in the areas of

social functioning and concentration, persistence or pace, but does not point to any evidence suggesting that he satisfied the Listings requirements for "marked" impairment in both of these areas.  Generously viewing plaintiff's brief, the Court can glean that plaintiff relies on Dr. Zaroff's consulting opinion, which found him to be markedly limited in the area of social functioning, to support his listing claim.  (Tr. 868).[4]  Yet, Dr. Zaroff did not conclude, nor did any other treating, consulting, or reviewing physician, that plaintiff was markedly limited in two areas or markedly limited in one area and had sufficient episodes of decompensation, of extended duration.  Plaintiff's burden at Step 3 is clear and plaintiff has not satisfied it.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severe, does not qualify.").

### 2.    Medical Opinions

According to plaintiff, the ALJ's conclusion that he does not have an impairment or combination of impairments that meet or equal listed impairments 12.03, 12.04, 12.06. 12.08, and/or 12.09 is premised exclusively on the file reviews

---

[4] Dr. Zaroff also found plaintiff to be markedly limited in areas relating to complex instructions and complex work judgments, but this does necessarily mean that plaintiff has marked limitations in concentration, persistence or pace, given Dr. Zaroff's conclusions that plaintiff had no limitations relating to simple instructions and simple work-related judgments and decision-making, which is no more limited than as found by the ALJ in the RFC.  (Tr. 867).

of two state hired psychologists, Dr. Strait and Dr. DeLoach, which plaintiff

maintains are not medically accurate.[5]   Plaintiff asserts that opinions of Dr. Strait

and DeLoach are contrary to the treating experts who were in the file and were

reviewed by the examiners.   However, there was also a vast amount of medical

records that were supplemented into the record long after Dr. Strait and Dr.

DeLoach issued their opinions.   These examiners did not have access to those

reports, nor did they have access to the report of the Commissioner's IME, Dr.

Zaroff, who personally examined plaintiff.   Dr. Zaroff opined that plaintiff was

functioning very poorly and his condition was "guarded to poor."   (Tr. 866).   Dr.

Zaroff specifically concluded that plaintiff had PTSD, was bi-polar and was very

anxious.   He recognized a serious mood disorder that had resulted in a suicide

attempt.   Plaintiff further presented as a person who was very reactive and "is not

likely to be able to tolerate typical frustration of an average workday on a sustained

basis."   (Tr. 866).   According to plaintiff, Dr. Zaroff's opinions mirror most of the

findings of plaintiff's treating counselors, psychologists, physicians in that he

found that he had PTSD, was bipolar, moderately depressed, and had severe issues

with anxiety and an inability to tolerate typical frustration associated with work.

---

[5] Plaintiff's objections to the weighing of medical opinions overlaps his claim that the ALJ's Listing analysis is flawed, but the undersigned has already concluded that no physician, treating, consulting, or examining, opined that plaintiff met any of the Listings and plaintiff has not pointed to any evidence suggesting he satisfied the Listings.

(Tr. 866).  Plaintiff alleges that the ALJ improperly chose to rely on examiners who never saw him as opposed to Dr. Zaroff.  Plaintiff observed that the only stated reason for the ALJ's discounting of Dr. Zaroff's opinion is that "aside from [Zaroff s evaluation] no clinician has described substantial difficulty interacting with the claimant during the appointments.  (Tr. 27).  She further discounts his opinion because it is allegedly, "not consistent with the medical evidence ... ."  (Tr. 29).

Plaintiff also maintains that the ALJ failed to examine or discuss any of the opinions of other examiners, almost all of whom were treaters that are in the record initially and as timely supplemented by plaintiff's counsel.  Instead, the ALJ discounts the reliability of GAF scores and does not confront the opinions of those examiners.  (Tr. 29).  In response to counsel's argument that plaintiff is not capable of gainful employment, the ALJ finds that it was inconsistent with the medical of record.  (Tr. 29).  However, according to plaintiff, the ALJ failed to address the vast medical evidence that supported plaintiff's claim of disability.  According to plaintiff, the medical opinions provide a uniform finding of a very impaired man who cannot maintain social functioning.  Plaintiff asserts that the opinions of Drs. Lenhart and O'Connor, psychologists Zaroff, nurse practitioner Kreiner, and the records from the Wyandot Center are, essentially uncontradicted.  Dr. Zaroff found plaintiff unable to engage in gainful employment.  Only a psychologist reviewing

records found that plaintiff could perform simple repetitive tasks.  Plaintiff

maintains, however, that this conclusion ignored the fact that he has never had the

ability to deal with people on the job.

      In response, the Commissioner points out that psychologists Dr. DeLoach

and Dr. Strait reviewed the treatment record and found plaintiff capable of simple

work with highly limited contact with others.  (Tr. 124, 390).  Later, psychologist

Dr. Zaroff interviewed plaintiff and concluded he would have no difficulty with

simple tasks, but "marked" difficulty with social interactions.  (Tr. 867-68).

According to the Commissioner, the ALJ reviewed Dr. Strait's opinion in great

detail.  (Tr. 27-28).  She noted Dr. Strait concluded plaintiff would have difficulty

interacting with coworkers, but also noted plaintiff had many friends, could go out

in public by himself, and interacted regularly with his mother, suggesting that he

had some social abilities.  (Tr. 28).  The ALJ reasonably concluded that Dr. Strait's

opinion was consistent with the evidence, and assigned it "some weight."  *Id*.

The ALJ then noted Dr. De Loach's opinion was similar to that of Dr. Strait's, and

similarly assigned it "some weight."  *Id*.  Finally, the ALJ reviewed Dr. Zaroff's

interview report.  (Tr. 28-29).  She expressly noted Dr. Zaroff's conclusion that

plaintiff could not tolerate the "typical frustration of an average workday on a

sustained basis," and had social difficulties.  (Tr. 28, 866).  Nonetheless, the ALJ

also observed that plaintiff normally had no major difficulties interacting with

treating sources during the relevant period.  (Tr. 29; e.g., Tr. 364, 377, 396, 418).

She also noted the rest of the record seemed inconsistent with such extreme social

problems.  (Tr. 29).  Thus, the ALJ concluded Dr. Zaroff's report conflicted with

the rest of the record, and so assigned it "little weight."  *Id.*

Plaintiff seems to argue mainly that the ALJ had to adopt the section of Dr.

Zaroff's opinion finding that he could not tolerate any interaction with coworkers.

The Commissioner points out, however, that an ALJ is not bound by a consultative

exam report—rather, she evaluates it like any non-treating source opinion.  Social

Security Ruling 96-6p, 1996 WL 374180, at *4 (program consultant opinions "are

to be evaluated considering all of the factors set out in the regulations for

considering opinion evidence.").  And "the ALJ is under no obligation to take an

all-or-nothing approach to any medical opinion."  *Chance v. Colvin*, 2015 WL

3440863, at *7 (E.D. Tenn. May 28, 2015) (citing *Justice v. Comm'r of Soc. Sec.*,

515 Fed. Appx. 583, 587 (6th Cir. 2013)); *see also Norgren v. Comm'r of Soc.

Sec.*, 2015 WL 5026173, at *11 n.14 (E.D. Mich. Aug. 25, 2015) (affirming RFC

assessment where the ALJ "utilized the information gained from the medical

source" and gave "aspects of it appropriate, relative weight").

The Commissioner again points out that the ALJ's observation that there

was much evidence inconsistent with Dr. Zaroff's finding that plaintiff could not

interact with others is well-supported by the ALJ's citation to record evidence:

17

(1) Clinicians often noted no difficulty interacting with plaintiff (Tr. 24, 27; e.g., Tr. 364, 377, 396, 418);

(2) Plaintiff reported having many friends, and indeed often lived with others, suggesting he had some ability to interact with others (Tr. 24, 27, 54, 159, 409, 429);

(3) Plaintiff spoke with his mother regularly (Tr. 24, 70, 163);

(4) Plaintiff liked doing karaoke at bars, and could shop and go out alone, which seemed somewhat inconsistent with crippling social problems (Tr. 27, 396, 863); and

(5) Drs. Strait and DeLoach found plaintiff capable of at least a low level of social interaction in a work environment (Tr. 27-28, 124, 390).

Thus, the Commissioner asserts that there was no error in discounting the social aspect of Dr. Zaroff's opinion due to inconsistency with the record.  20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

While plaintiff complains that the ALJ overlooked "the opinions of other examiners, almost all of who [sic] were treaters that are in the record initially and as timely supplemented by [Plaintiff's] counsel," the Commissioner points out that plaintiff's treating sources never opined to specific functional limitations or restrictions.  As a result, they did not render opinions and there was nothing to

overlook.  *See* 20 C.F.R. § 416.927(a)(2).  The Commissioner notes that plaintiff

may be referring to certain "Global Assessment of Functioning" scores (or "GAF

scores"), which are snapshot assessments, and are supposed to measure symptoms

or limitations, whichever is worse.  Am. Psychiatric Ass'n, Diagnostic & Statistical

Manual of Mental Disorders (4th ed., "Text Revision," 2000), pp. 32-33.   GAF

scores also encompass non-work-related functioning and symptoms.  *Id*.  Thus, the

Commissioner maintains that GAF scores do not necessarily correspond to

disability under the Social Security Act, which focuses solely on work ability, and

there is no strict rule concerning their probative value.  *Miller v. Comm'r of Soc.

Sec.*, 811 F.3d 825, 836 (6th Cir. 2016) ("We take a case-by-case approach to the

value of GAF scores"); *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. Appx. 681, 684

(6th Cir. 2011) (a "GAF score is not particularly helpful by itself."); *McLaurin v.

Comm'r of Soc. Sec.*, 2016 WL 7664222, at *5 (E.D. Mich. Dec. 1, 2016) (Mag. J.)

("GAF scores do not directly correlate to mental wellness"), adopted, 2017 WL

67453 (January 6, 2017).  Regardless, the Commissioner points out that the ALJ

did review and discuss the GAF scores in detail.  (Tr. 29).  Here, the ALJ noted

that plaintiff had various temporary situational stressors, which likely influenced

the assigned GAF scores.  *Id*.  Thus, the Commissioner maintains that the ALJ

reasonably concluded that the GAF scores did not necessarily reflect work

abilities.  *Id*.

(a).    Treating physician opinions

The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must apply specific factors to resolve the question of what weight will be assessed.  Those factors include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544.  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

20

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not.  Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart*, 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

Here, plaintiff identifies some treaters – Dr. Lenhart, Dr. O'Connor, and Nurse Practitioner Kreiner – but fails to identify any medical opinions they offered that the ALJ did not properly consider.  Rather, plaintiff points to their diagnoses and their GAF scores.  (Dkt. 13, pp. 4, 15, 16 n.2 (citing Dr. Lenhart diagnoses and GAF scores)); (Dkt. 13, pp. 16-17 (citing Dr. O'Connor diagnoses)); (Dkt. 13, pp. 18-19 (citing GAF score of NP Kreiner)).  GAF scores, however, do not constitute medical opinions.  As explained in *Benton v. Comm'r of Soc. Sec.*, 2017 WL 6333862, at *8 (W.D. Mich. Dec. 12, 2017), while the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx.

496, 511 (6th Cir. Feb. 9, 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  Indeed, a "GAF score does not reflect a clinician's opinion of functional capacity, and, therefore, an ALJ is not required to consider it when determining a claimant's ability to work."  *Shorkey v. Comm'r of Soc. Sec.*, 2014 WL 5361995, at *3 (E.D. Mich. Sept. 12, 2014), report and recommendation adopted, 2014 WL 5362069 (E.D. Mich. Oct. 21, 2014) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ is not required to consider GAF score in assessing residual functional capacity)).  In addition, under the regulations in effect at the time of the ALJ's decision, the GAF scores issued by NP Kreiner and Jennifer Calys, LMSW, non-acceptable medical sources, were due no deference at all.  *See e.g.*, *Roulette v. Colvin*, 2015 WL 3951947, at *10 (E.D. Tenn. June 29, 2015) ("Not only do these GAF scores not constitute treating physician opinions, the majority of GAF scores were assessed by non-acceptable medical sources.") (citing 20 C.F.R. §§ 404.1513(a); 404.1527(a)(2), 416.927(a)(2) (applicable to claims filed before March 27, 2017)).

Here, there are two GAF scores in the record issued by acceptable medical sources after the alleged onset date.  Dr. Lenhart gave plaintiff a GAF score of 45 on April 4, 2014 (Tr. 377) and Dr. Parashar Sunil assigned a GAF of 40-45 when plaintiff was in the hospital in June 2014 for a suicide attempt (Tr. 397).  Plaintiff appears to have seen each physician on one occasion, thus neither physician

qualifies as "treating physician," in any event.  (Tr. 500, 376-77, 396-97).[6]  Hence,

the Court is not presented with a situation like that found in *Keeton*, where the

Sixth Circuit relied on the existence of consistency among low GAF scores from a

long term treating physician to support a determination that an ALJ minimized the

severity of a claimant's symptoms and failed to provide good reasons for assigning

limited weight to a treating doctor's opinion.  *See Keeton v. Comm'r of Soc. Sec.*,

583 Fed. Appx. 515, 529-30, 530 n.6 (6th Cir. 2014).  And, the singular fact that a

plaintiff suffers from a certain condition or carries a certain diagnosis does not

equate to disability or a particular RFC.  Rather, the residual functional capacity

circumscribes "the claimant's residual abilities or what the claimant can do, not

what maladies a claimant suffers from–thought the maladies will certainly inform

the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc.

Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  There is no question but that the ALJ

---

[6] *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship.... Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."); *Willis v. Comm'r of Soc. Sec.*, 2012 WL 7608133, *9 (E.D. Mich. Oct., 29, 2012) (treating relationship was not established after plaintiff saw physician only two times before opinion was issued ... "at the time he issued his opinions, that longitudinal relationship was not yet established."); *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source."); 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources ... are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from ... reports of individual examinations, such as consultative examinations or brief hospitalizations.").

found this plaintiff to have several "severe" mental impairments, however, "[a]

claimant's severe impairment may or may not affect his or her functional capacity

to work.  One does not necessarily establish the other."  *Yang v. Comm'r of Soc.*

*Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).  "The regulations

recognized that individuals who have the same severe impairment may have

different [residual functional capacities] depending on their other impairments,

pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425,

429 (6th Cir. 2007).  Thus, the mere existence of any severe condition from which

plaintiff may have suffered does not necessarily establish any functional limitation

or disability.  Here, the opinions regarding plaintiff's diagnoses as identified by

Drs. Lenhart and O'Connor, by themselves, do not inform his limitations.  For

these reasons, the undersigned finds no reversible error as to the ALJ's assessment

of the GAF scores in this case and the purported "opinions" of Dr. Lenhart and Dr.

O'Connor.

(b).    Reviewing/examining opinions

Here, the ALJ gave the opinions of Dr. Strait[7] and Dr. DeLoach "some

weight" (Tr. 28) finding that their opinions were generally consistent with the

record evidence.  The ALJ observed that although Dr. Strait did not accurately

---

[7] Notably, some of the narrative portions of Dr. Strait's report are not visible in the transcript, although plaintiff has not raised this as a point of error.  (Tr. 388-390).

describe all the limitations arising from plaintiff's impairments, the evidence

supports her conclusion that he can perform simple work activities involving

additional social restrictions. (Tr. 28). Similarly, the ALJ gave some weight to Dr.

DeLoach's conclusion that that plaintiff could perform simple tasks on a sustained

basis in an environment involving minimal contact with coworkers and the public.

*Id*. The ALJ gave little weight to Dr. Zaroff's opinion, despite the fact that Dr.

Zaroff actually examined plaintiff. The ALJ concluded that Dr. Zaroff's opinions

regarding plaintiff's limitations were not consistent with the medical evidence,

which establishes that plaintiff had a greater capacity for interacting with others,

responding to work situations, and changes in the routine work setting. (Tr. 29).

And, while plaintiff did have problems with frustration tolerance during Dr.

Zaroff's examination, the ALJ pointed out that other clinicians have not noted

similar issues and even when he does express frustration, his mental status

examinations typically remain unchanged. According to the ALJ, these facts show

that plaintiff is capable of tolerating the typical frustration of an average workday

without difficulty. The ALJ also concludes that plaintiff has shown he can perform

a wide variety of daily tasks and spend time with others on a regular basis,

suggesting that he should be able to work outside of a supported environment and

succeed at work even in less than ideal circumstances. *Id*. The ALJ further

concluded that Dr. Zaroff's opinion did not offer any findings to support the

restrictions he described.  *Id*.  As the Commissioner explained above, the stated

reasons for giving Dr. Zaroff's opinion little weight, are supported by the record.

(Tr. 24, 27; e.g., Tr. 364, 377, 396, 418, clinicians often noted no difficulty

interacting with plaintiff); (Tr. 24, 27, 54, 159, 409, 429, plaintiff reported having

many friends, and indeed often lived with others, suggesting he had some ability to

interact with others); (Tr. 24, 70, 163, plaintiff spoke with his mother regularly);

(Tr. 27, 396, 863, plaintiff liked doing karaoke at bars, and could shop and go out

alone, which seemed somewhat inconsistent with crippling social problems); (Tr.

27-28, 124, 390, Drs. Strait and DeLoach found plaintiff capable of at least a low

level of social interaction in a work environment).  For these reasons, the

undersigned agrees with the Commissioner that substantial evidence supports the

ALJ's conclusion that Dr. Zaroff's opinions were not consistent with the medical

evidence in the record.

Moreover, it is well-established that opinions from reviewing State agency

physicians "may be entitled to greater weight than the opinions of treating or

examining sources."  SSR 96-6p; 1996 WL 374180, at *3; *Brooks v. Comm'r of*

*Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from State agency

medical and psychological consultants ... may be entitled to greater weight than the

opinions of treating or examining sources.") (quoting SSR 96-6p, 1996 WL

374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11,

2014) ("[I]t is not a per se error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion.").  Indeed, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence.  *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)).  While plaintiff says that the reviewing opinions were contrary to the treating physician opinions, he fails to identify any such treating physician opinions.  And, as concluded above, the diagnoses and GAF scores posited by Dr. O'Connor and Dr. Lenhart do not qualify as medical opinions to which any deference was required.

Further, while plaintiff objects to the ALJ's reliance on Drs. Strait and DeLoach's opinions because they did not have access to all the medical evidence in the record, the ALJ can reasonably credit the opinion of a reviewing medical source, despite the fact that the source did not have access to the entire record, where the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record.  *Glasgow v. Comm'r of Soc. Sec*., 690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec*., 343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the

physician did not consider)).  The ALJ sufficiently supported her decisions as to how to weigh the opinion evidence.  She adopted no opinion in total, finding plaintiff more limited than Drs. Strait and DeLoach, but less limited than Dr. Zaroff.  The ALJ also expressly considered and examined the medical evidence submitted by plaintiff's counsel after the hearing,[8] satisfying the requirements of *McGrew*.  (Tr. 22, citing Ex. B8F at 275-276, 278-279, 341-342; Tr. 24, citing Ex. B8F; Tr. 26, citing Ex. B8F at 71-74; Tr. 27, citing Ex. B8F, at 14-21, 25-26, 71-74; Tr. 29, citing Ex. B8F at 66).

In the view of the undersigned, the ALJ's weighing of the reviewing and examining opinions falls well within her "zone of choice."  Because the ALJ's findings were supported by substantial evidence, the Court must affirm them, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").  The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the

---

[8] These records can be found at Tr. 441-860, labeled as Exhibit B8F.

courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).   This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility.  *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 24, 2018              s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 24, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov